Exhibit A

ELECTRONICALLY FILED
2019 Nov 26 PM 1:24
CLERK OF THE WYANDOTTE COUNTY DISTRICT COURT
CASE NUMBER: 2019-CV-000904



**Court:** Wyandotte County District Court

**Case Number:** 2019-CV-000904

**Case Title:** Erica A Jones vs. Nebraska Furniture Mart Inc

**Type:** Summons/Nebraska Furniture Mart Inc

SO ORDERED.

/s/ Clerk of District Court

Electronically signed on 2019-11-26 13:24:23     page 1 of 2

## 2IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | |
|---|---|
| ERICA JONES, | ) |
| | ) |
|       Plaintiff, | ) |
| | )   Case No.: 2019-CV-000904 |
| v. | )   Division No.: 6 |
| | )   Chapter No.: 60 |
| NEBRASKA FURNITURE MART, INC., | ) |
| | ) |
|       Defendant. | ) |

To the above-named Defendant:

> **Nebraska Furniture Mart, Inc.**
> **Registered Agent: Incorp Services, Inc.**
> **534 South Kansas Ave, Suite 1000**
> **Topeka, Kansas 66603**

### SUMMONS

You are hereby notified that an action has been commenced against you in this Court. You are required to file your Answer or Motion under K.S.A. 60-212, and amendments thereto, to the Petition with the Court and to serve a copy upon:

> Daniel L. Doyle
> Robert A. Bruce
> DOYLE & ASSOCIATES LLC
> 748 Ann Avenue
> Kansas City, Kansas 66101
> Telephone: (913) 371-1930, ext. 109
> Facsimile: (913) 371-0147
> d.doyle@ddoylelaw.com
> r.bruce@ddoylelaw.com
> ATTORNEY FOR PLAINTIFF

Within 21 days after service of summons on you.

_____
Clerk of the District Court

**Documents to be served with Summons:**
Petition

## IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | |
|---|---|
| **ERICA JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    **Case No.:** |
| v. | )    **Division No.:** |
| | )    **Chapter No.:** |
| **NEBRASKA FURNITURE MART, INC.,** | ) |
| | )    **REQUEST FOR JURY TRIAL** |
| **Defendant.** | ) |

Serve Resident Agent:
Incorp Services, Inc.
534 South Kansas Ave, Suite 1000
Topeka, Kansas  66603

### PETITION PURSUANT TO K.S.A. CHAPTER 60

COMES NOW Plaintiff, Erica Jones, and for her cause of action against the above-named Defendant, alleges and states as follows:

1. Plaintiff is a resident of Missouri.

2. Defendant is a Nebraska corporation doing business in Kansas and in good standing to do so, with a place of business located at 1601 Village West Parkway, Kansas City, Wyandotte County, Kansas 66111.

3. Defendant took adverse employment actions against Plaintiff in Kansas City, Wyandotte County, Kansas.

4. This makes jurisdiction and venue proper in this Court.

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (KANSAS WORKER COMPENSATION LAW)

5. Defendant sells furniture and home decor from its store in Kansas City, Kansas.

6. Plaintiff began working for Defendant in August 2015.

1

7. Plaintiff worked as a machine operator, moving merchandise throughout Defendant's back-of-store area to facilitate deliveries, sales, inventory assessment, and stocking of the sales floor.

8. Around 2016, Narkevius Smith became Plaintiff's supervisor.

9. On November 28, 2018, while working in the course and scope of her employment, Plaintiff suffered a work-related injury to her neck/cervical spine when a heavy box of dishes struck her neck and shoulder area.

10. Defendant attempted to deny the injury was work-related, forcing Plaintiff to hire legal counsel to secure benefits, including medical treatment.

11. Among other false accusations, Defendant argued that the injury occurred at Plaintiff's part-time job.

12. Plaintiff underwent surgery on or about December 17, 2018.

13. Plaintiff was kept off work for several months, and then returned to light duty work following that time.

14. It was ultimately found that the injury was caused by the workplace accident at Defendant's facility, making Defendant responsible for the costs of the surgery.

15. Plaintiff settled that work comp claim in July 2019.

16. Plaintiff continued working for Defendant without issue until September 2019.

17. On September 20, 2019, Plaintiff was at work in the early morning.

18. She was attempting to pull a very large box of merchandise from a high shelf, causing her to reach up over her head-level.

19. Normal practice of Defendant is to not place large, heavy boxes on high

shelves to avoid injury.

20. The size and weight of the box put great strain on Plaintiff's left shoulder as she lifted it, causing a "pop" in Plaintiff's left shoulder.

21. Plaintiff felt immediate pain, but it was not so severe as to hinder her ability to continue working.

22. Smith reported to work a few hours after Plaintiff's workplace accident.

23. Plaintiff asked Smith who had placed such a large, heavy box on the highest shelf.

24. Smith replied that he and another employee, Derrick Bell, had done so.

25. Plaintiff replied that her shoulder was sore from having to lift the large, heavy box from so high.

26. Smith simply shrugged this off and walked away.

27. Plaintiff returned for her shift the following day, and was continuing to experience pain in her left shoulder.

28. Plaintiff was also experiencing frequent headaches.

29. Plaintiff mentioned to the Team Leader, Michael, that Plaintiff's productivity was down because of the trouble she was having with her shoulder and headaches.

30. Plaintiff was off the following two days pursuant to her regular work schedule.

31. Despite being off work, Plaintiff called Smith on Monday, September 24, 2019 to request that Smith complete an accident report for Plaintiff's injury so that Plaintiff could see an authorized treating physician.

32. Smith seemed dismissive of the need to complete a report, but told Plaintiff

he would "get to it eventually."

33. Plaintiff described to Smith how she was injured.

34. However, Plaintiff made an error regarding the date the accident occurred, stating it happened on Thursday, September 19 rather than Friday, September 20.

35. On Tuesday, September 24, 2019, Plaintiff reported to work.

36. Plaintiff did not find any report prepared by Smith.

37. Plaintiff tried to call Smith but he did not answer.

38. Smith arrived approximately 2 hours later, around 8:30 a.m.

39. When Smith arrived, Plaintiff asked him if he had completed the report.

40. Smith looked visibly frustrated, and told Plaintiff he would do it that day.

41. Plaintiff continued working despite her pain.

42. Plaintiff began to wonder when the Safety Director for Defendant, Clint l/n/u, would interview her and authorize treatment.

43. Plaintiff knew from her prior injury that Clint would conduct an interview after he received the report and then Plaintiff could be examined by a doctor.

44. Plaintiff began to suspect that Smith had failed to turn over the report based on Smith's reluctance to complete the report.

45. Plaintiff sought out Smith to ask if she needed to discuss her injury with Clint.

46. At that point, Smith finally gave the injury report to Clint and then took Plaintiff to meet with Clint.

47. Plaintiff was finally sent to an authorized treating physician around 11:00am that day.

48. The authorized treating physician treated the injury as an "reopening" of Plaintiff's previous work-related injury.

49. The authorized treating physician placed Plaintiff on work restrictions, which included no overhead lifting and no lifting over 20 lbs.

50. Plaintiff reported to work on September 25, 2019 and began performing assigned light duty.

51. Dave Houston, a Human Resources representative of Defendant, asked Plaintiff to come to his office to discuss her work-related injury.

52. Houston told Plaintiff: "We're going to start an investigation into your injury."

53. Houston then began asking Plaintiff what she was doing when she was injured.

54. Plaintiff recounted what she had been doing and how she was injured.

55. Houston asked Plaintiff is she was using a cart around the time of her injury.

56. Plaintiff could not remember if she was or was not, as she uses such carts nearly every day.

57. Plaintiff told Houston she couldn't remember, but it was possible.

58. As it turned out, because Plaintiff had misstated the day she was injured, Houston was looking at video footage from the incorrect day.

59. Houston never directly told Plaintiff that he could not confirm her version of events via the video, but instead conducted a surreptitious interrogation of Plaintiff.

60. That same day, Smith presented Plaintiff with a document titled "Performance Agreement for Negligent Accident."

5

61. The "negligent accident" was described as failing to report her work-related injury immediately.

62. The document stated that Plaintiff had not told Smith about the injury until September 24, 2019.

63. Plaintiff knew that this wasn't true, but that it would just be her word against Smith's word.

64. Plaintiff agreed to sign the document, as it was only a first warning and set a follow up meeting with Smith for November 25, 2019.

65. The afternoon of September 25, Houston again summoned Plaintiff to his office.

66. Houston asked Plaintiff: "Are you sure about the date?"

67. Plaintiff replied that she might have been off.

68. After thinking about it, Plaintiff ultimately determine she was off by a day, and that the injury had occurred on Friday, September 20, 2019.

69. At that time, Houston showed Plaintiff a video recording of her injury.

70. Houston had figured out the correct date and watched Plaintiff being injured just as she had described.

71. Plaintiff apologized for her mistake, but confirmed that the video showed the workplace accident which had caused her injury.

72. Plaintiff finished her shift and left for the day.

73. Plaintiff completed her light duty assignments without issue and worked her regular shift on September 26, 2019.

74. When Plaintiff arrived at work on September 27, 2019, she noticed that her

6

coworkers and Smith were acting strangely.

75. Everyone seemed to be avoiding Plaintiff.

76. Around noon, Plaintiff received a call from Clint.

77. Clint told her that she had been approved for physical therapy and had an appointment scheduled that afternoon.

78. Plaintiff left to attend that appointment.

79. Approximately two hours later, Plaintiff received a phone call from Houston and Smith.

80. Houston told Plaintiff: "We've decided to terminate your employment."

81. Plaintiff asked why.

82. Houston replied, "for honesty and integrity."

83. Plaintiff asked what that meant.

84. Houston replied "We're not going to discuss it. Have a great day."

85. Houston then terminated the phone call.

86. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

87. Plaintiff exercised rights granted by the Kansas Worker's Compensation Act.

88. Defendant took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff.

89. Defendant's adverse employment actions taken against Plaintiff were each based upon, and directly related to, Plaintiff exercising her rights for workers' compensation benefits as stated above.

7

90. Defendant's adverse employment actions against Plaintiff violate State public policy clearly declared by the Courts and the Kansas Legislature.

91. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

92. Defendant acted toward Plaintiff with willful conduct, wanton conduct, or malice.

93. Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, the Plaintiff prays for judgment against the above-named Defendant in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

Respectfully submitted,

 */s/ Daniel L. Doyle*
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS  66101
(913) 371-1930, ext. 109
(913) 371-0147  Facsimile
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
**ATTORNEYS FOR PLAINTIFF**